```
            UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

ROGER EUGENE SENTIWANY,           :   **CIVIL NO. 1:07-CV-0531**
                                  :
        Plaintiff         :   (Judge Conner)
                                  :
    v.                          :   (Magistrate Judge Smyser)
                                  :
MICHAEL J. ASTRUE,                :
Commissioner of                   :
Social Security,                  :
                                  :
        Defendant         :

## REPORT AND RECOMMENDATION

    The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security[1] denying his claim for Social Security supplemental security income. It is the Decision of November 22, 2006 that is the subject matter of this appeal.

    By way of background, on March 21, 2001, the plaintiff, Roger Eugene Sentiwany, applied for supplemental security income. He claimed that he became disabled on November 1, 1999, due to chronic pancreatitis, hepatitis C, a cyst and depression. His claim was initially denied. The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on August 1, 2002.

---

[1] We have substituted the present Social Security Commissioner, Michael J. Astrue, as the defendant herein.

At the August 1, 2002 hearing, the plaintiff and a vocational expert testified. (Tr. 25-55.) The plaintiff stated that he was born on June 29, 1962. He is married, but is separated. At the time of the August 1, 2002 hearing, the plaintiff lived with his parents and had lived with them since November 1999. His past relevant work includes work as an insulation installer and work as a truck driver. (Tr. 50.) The plaintiff drives to the store and makes other short trips. He also drives to New York approximately three times per month to visit his girlfriend. (Tr. 30.)

The plaintiff stated that he has pain located in the lower right side of his abdomen and the middle low back. (Tr. 32.) His pain is constant but fades when he takes medication. *Id.* The medication is effective if he takes a high dosage. (Tr. 33.) Side effects of the medication include irritability and difficulty concentrating. (Tr. 41-42.) He also stated that certain foods exacerbate his pain. (Tr. 32-33.) If he does not take his medication he is miserable and lays on the ground writhing in pain. (Tr. 39.) He attributes memory loss to his hepatitis C. (Tr. 40.)

The plaintiff testified that he last drank alcohol six months prior to the ALJ hearing and he last used marijuana a few months prior to the ALJ hearing. (Tr. 33-34.)

The plaintiff described his depression as causing him not to want to do anything. (Tr. 34.) He has no thoughts of self-

harm, but he had suicide thoughts when his doctor wanted to take him off Oxycontin. (Tr. 34, 42.)  The plaintiff last treated with a psychiatrist in February 2002. (Tr. 47.)  He experiences sleep disturbance and sometimes has difficulty getting along with others.  (Tr. 34-35.)

The plaintiff stated that certain days he is unable to walk while other days he is able to walk a half-mile to three-quarters of a mile.  His ability to walk depends on when he takes his medication and his pain level.  (Tr. 35.)  He stated that fifty percent of his days are "bad" days.  (Tr. 36.)  On "bad" days, he is essentially bedridden.  (Tr. 36-37.)  He occasionally watches television in bed, but when he is in pain he does not have the desire to do much.  (Tr. 37.)  On "good" days, the plaintiff is able to clean the house, vacuum, wash dishes and mow the lawn.  (Tr. 37, 45.)  The plaintiff is able to care for himself, dress, shave and bathe himself.  Sometimes he has to sit while in the shower.  (Tr. 36-37.)

The plaintiff stated that one of his hobbies is watching horse racing and he occasionally goes to the horse track.  (Tr. 38.)  He also visits with a friend a couple of times a month.  When he is irritable, he does not like to interact with the public or with groups.  (Tr. 40.)

The vocational expert classified the plaintiff as a younger individual with a twelfth grade education.  (Tr. 49-50.)  According to the Dictionary of Occupational Titles, work as a

3

pipe insulator would be classified as semi-skilled work at the medium duty exertional level. (Tr. 50.)  However, according to the plaintiff's description of the job, the vocational expert identified the plaintiff's past work as a pipe insulator as an unskilled general laborer position at the light duty exertional level. (Tr. 50-51.)

The ALJ then asked the vocational expert to hypothetically consider an individual of the plaintiff's age, education and work experience with the residual functional capacity for light work and the inability to perform routine repetitive tasks and inability to interact with the public, co-workers or supervisors. (Tr. 52.)  The vocational expert testified that such an individual would not be able to perform either the plaintiff's past relevant work or any other work in the local or national economies. (Tr. 52-53.)  The ALJ next asked the vocational expert to consider that same hypothetical individual with the ability to perform routine, repetitive tasks, but not detailed or complex tasks.  Also, the tasks would not involve interaction with the public or co-workers. (Tr. 53.)  The vocational expert testified that such an individual would be able to perform the plaintiff's past relevant work and certain other work in the local and national economies. *Id.*  The vocational expert identified the other work as the jobs of machine tender, packager, hand packager and hand sorter. *Id.*

On January 15, 2003, the ALJ issued a decision denying the application of the plaintiff for benefits. (Tr. 15-24).  The

4

ALJ found that the plaintiff had not shown that he could not perform his past relevant work. The Appeals Council denied the plaintiff's request for review (Tr. 4-7), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed another application for supplemental security income in March 2003. (Tr. 660, 733). The claim was denied initially and the plaintiff did not pursue the matter any further. (Tr. 620, 660, 712).

The plaintiff filed another application for supplemental security income on March 31, 2004. (Tr. 730). His claim was initially denied. The plaintiff filed a request for a hearing, but waived his right to appear at the hearing. (Tr. 590, 620, 659, 694, 704). On January 25, 2005, an ALJ issued a decision denying the plaintiff benefits. (Tr. 617-25). The plaintiff requested review by the Appeals Council. (Tr. 646). On April 14, 2005, this court in M.D. Pa. Civil No. 1:04-CV-1211 remanded the plaintiff's March 21, 2001 claim to the Commissioner. (Tr. 636). The Appeals Council vacated the Commissioner's final decision in the plaintiff's March 21, 2001 claim, granted the plaintiff's request for review of the ALJ's decision in his March 31, 2004 application, consolidated the plaintiff's March 21, 2001 and March 31, 2004 claims, and remanded the matter to the ALJ. (Tr. 655-58).

The plaintiff thereafter submitted additional documents to the ALJ. Supplemental hearings were held before the ALJ on May

3, 2006 and October 23, 2006.  (Tr. 1127-79).

At the May 3, 2006 hearing, the plaintiff, proceeding *pro se*, testified.  (Tr. 1127-1150.)  He testified that he no longer lives with his parents.  He lives in subsidized housing and receives $200.00 a month in public assistance payments.  (Tr. 1137.)  He does not socialize, but sees his friend once a month.  (Tr. 1138-39.)  They usually go to horse races.  (Tr. 1139.)

The plaintiff testified that he underwent interferon treatment for his hepatitis C.  (Tr. 1132.)  He believes that he experienced more side effects after the treatment.  *Id.*  Subsequent to the treatment, the plaintiff gained weight, had a sore throat for four months, irritable bowel syndrome, pain on his left side, a fast beating heart, liver pain, bone pain, dizziness, blackout spells and possible anxiety.  (Tr. 1132-33, 1140-41.)

The plaintiff testified that he quit smoking for four months but has since started smoking again.  (Tr. 1135.)  He is attempting to quit again.  *Id.*  He takes 80 milligrams of Oxycontin every twelve hours and five milligrams of Oxycodone up to eight times a day.  (Tr. 1136.)  He also takes Celexa for mental health treatment, and he believes that it helps his condition.  *Id.*  He had not received counseling in the year prior to the ALJ hearing.  He takes enzymes and antacids for his pancreas.  (Tr. 1137.)  He reported no side effects from

the medications.  (Tr. 1143.)

The plaintiff usually sleeps until 3:00 p.m., and sometimes he sleeps until 7:00 p.m.  (Tr. 1142.)  During the day, he showers, uses the computer, goes to the grocery store or reads the newspaper.  (Tr. 1142-44.)  He occasionally reads books and watches television.  He has some difficulty following television programs due to his lack of interest.  (Tr. 1142.)

In his testimony, the plaintiff rated his pain at a three or four out of ten, after taking almost a double dose of pain medication.  (Tr. 1145.)  His pain was in his whole spine and right side.  He had no energy.

At the October 23, 2006 hearing, the plaintiff, proceeding *pro se*, a vocational expert and a medical expert testified.  (Tr. 1154-79.)

The plaintiff testified that he takes 100 milligrams of Oxycodone twice a day, Celexa, pancreatic enzymes and milk thistle.  (Tr. 1159.)  He had no side effects from the medications.  *Id.*  He experiences fatigue but he does not believe that it is from the medications.  When he takes his medication he can usually get out of bed.  When he does not take medication he lays in bed.  (Tr. 1160.)  The plaintiff reported that he still smokes, but he is trying to quit.

The plaintiff stated that he mainly experiences back pain.

Since the interferon treatment he experiences pain in the right side of his neck, shoulder, arm and rib cage. (Tr. 1160-61.) He stays in bed most of the day, sometimes until 7:00 p.m. He drives to the grocery store and does minimal cleaning. (Tr. 1162.)

The medical expert testified that the plaintiff suffers from the severe impairments of chronic pancreatitis, chronic calcific pancreatitis, hepatitis C and severe mitral regurgitation probably due to prolapse. The witness noted that plaintiff's history of treatment for depression and back pain. (Tr. 1163.) In his opinion, the plaintiff's condition(s) would not meet or equal any of the listed impairments. *Id.* In his opinion, the plaintiff could perform sedentary work. (Tr. 1171.)

The vocational expert identified the plaintiff's past work as an insulation installer as heavy work and his work as a truck driver as medium work. (Tr. 1173.) He testified that there are unskilled sedentary jobs in the economy[2]. (Tr. 1178).

In the November 22, 2006 Decision, the ALJ found the plaintiff disabled as of September 1, 2005, but not disabled prior to September 1, 2005. (Tr. 587-99). As noted above, it

---

[2] The ALJ did not frame a meaningful or useful question to the Vocational Expert, asking only, "if we assume sedentary work, unskilled, are there jobs?

8

is the November 22, 2006 Decision that is the subject of this appeal.

The plaintiff filed his complaint with this court on March 20, 2007. The defendant filed an answer to the complaint and a copy of the administrative record on May 22, 2007. Pursuant to Local Rules 83.40.4 and 83.40.5 and this court's Order of March 20, 2007, ths plaintiff filed his brief on July 3, 2007 and the defendant filed his brief on September 7, 2007. The plaintiff filed his reply brief on September 17, 2007.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the

9

evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of

proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that he has severe impairments, that his impairments alone or in combination do not meet or equal the requirements of any listed impairment, and that he is not able to perform his past relevant work. The ALJ further determined that, prior to September 1, 2005, the plaintiff was not disabled and retained the residual functional capacity to perform a full range of sedentary work. (Tr. 593-99).

On the basis of these findings, the ALJ found that the plaintiff was disabled and entitled to benefits as of September 1, 2005. This appeal involves, therefore, the period of time from November 1, 1999 to September 1, 2005.

The plaintiff argues that the ALJ erred in not considering a letter dated March 7, 2006 authored by Jill P. Smith, M.D. The plaintiff states that he gave Dr. Smith's letter to the ALJ at the May 2006 hearing. However, the letter is not in the record. (Doc. 14.) The plaintiff states that the ALJ returned

the letter to the plaintiff, stating that she already had a copy.  *Id.*  The defendant argues that the letter was not submitted to the ALJ and is not a part of the record.  Thus, the defendant argues, the court cannot consider this evidence because it is not new and material and because there is not good cause for it not to have been submitted during the administrative process.  (Doc. 13 at 28).

In *Szubak v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984), the Court reviewed the criteria to be satisfied to support a new evidence remand.  The evidence "must first be 'new' and not merely cumulative of what is already in the record."  *Id*.  It must also be material, meaning that it is "relevant and probative" and there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination."  *Id.*  "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."  *Id.*

Additionally, when new evidence is presented for the first time to the district court, the plaintiff must demonstrate "good cause for not having incorporated the new evidence into the administrative record."  *Szubak*, 745 F.2d at 833; *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

Dr. Smith's March 7, 2006 letter states that she treats the

plaintiff for chronic hepatitis C and chronic pancreatitis. (*See* Doc. 8).  Dr. Smith states that over the past year the plaintiff completed interferon therapy for hepatitis C and that during that time he was unable to work.  She states that the plaintiff responded to the treatment and that his virus level is undetectable.  Dr. Smith also noted that the plaintiff's symptoms are improving with time.  She noted that he still has problems with pain from chronic pancreatitis and that he takes Oxycodone for his pain. Due to the plaintiff's symptoms, Dr. Smith stated, she believes that he is unable to work a full-time job.

Dr. Smith's September 1, 2005 letter stated her opinion that the plaintiff was disabled at that time and that he had been for at least a period of twelve months.  (Tr. 1051.)  Dr. Smith stated that the plaintiff had undergone interferon therapy but had stopped the treatment early due to adverse side effects.  *Id.*  The ALJ assigned great weight to this letter when making her disability determination.  (Tr. 597-98.)  The ALJ determined that the evidence pertaining to the plaintiff's disability prior to September 1, 2005 supports a finding that he was not disabled prior to September 1, 2005.  (Tr. 594, 598.)

The March 7, 2006 letter contains Dr. Smith's opinion that the plaintiff was unable to work during his interferon therapy, prior to September 1, 2005.  (*See* Doc. 14.)  The opinion was not previously stated and is not cumulative.  The letter is

13

material because there is a reasonable possibility that it would have changed the determination of the disability date if the ALJ had considered Dr. Smith's opinion that the plaintiff was unable to work during the interferon therapy, a time period prior to September 1, 2005.  *See Szubak*, 745 F.2d at 833.

The plaintiff states that he submitted the letter to the ALJ.  (Doc. 14.)  However, the letter is not in the record and there is no evidence as to why the letter is not part of the record.  (*See* Doc. 14).  The plaintiff is entitled to a remand for the ALJ to consider Dr. Smith's March 7, 2006 letter and to consider whether an earlier onset date is warranted to account for an inability to work during interferon therapy.

It is accordingly recommended that this case be remanded to the Commissioner for the sole purpose of a consideration of whether the disability of the plaintiff began on a date prior to September 1, 2005 due to the plaintiff's interferon therapy.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  October 24, 2007.